SHARLENE A. McEVOY,
    *Plaintiff*,

    v.

                                No. 3:16-cv-922 (JAM)

KRISTOPHER MATTHEWS and OFFICER
CONLON (#063),
    *Defendants*.

## RULING GRANTING MOTION FOR SUMMARY JUDGMENT

Two police officers decided to enter the home of someone they believed was an elderly

woman after they saw that the doors of her home had been left wide open and when no one

responded to their knocking and calls from outside the house. It turns out that nothing was wrong

and that plaintiff had merely left the doors open to "air out" the house while she was away on an

errand.

Plaintiff has now sued the police for money damages, claiming that their warrantless

entry into her house violated the Fourth Amendment. I will dismiss this action on grounds of

qualified immunity for lack of a showing that the law was clearly established that the police

could not enter someone's home under the circumstances presented here.

### BACKGROUND

The facts of this case stem from a dispute among neighbors in Derby, Connecticut. Plaintiff

owned an empty wooded lot across the street from the home of Benito Ortiz. The empty lot had

many trees, and Ortiz complained to the town that some of the trees were rotting and posed a

hazard to surrounding properties. Plaintiff was upset about Ortiz's complaint, and she hired an

1

attorney and wrote a letter to Ortiz in February 2016 to warn him not to trespass on her lot and accusing him of making false reports about her property.

A few weeks later, Ortiz and his spouse went to the police station to lodge a complaint against plaintiff. They met with Officers Matthews and Conlon who are the two defendants in this action. Ortiz told the officers that they were being harassed by plaintiff whom they described as an elderly woman.[1] He gave the officers two letters sent to him by plaintiff and her attorney. Ortiz claimed that plaintiff regularly drove by the wooded lot, got out of her vehicle, and then stared at Ortiz's property and at Ortiz's children while they were playing basketball in front of the Ortiz home.

The officers decided to go to plaintiff's home to talk to her about Ortiz's complaint. Plaintiff owned two houses on the next street over from the empty lot. The officers knocked on the door of one of the houses and announced themselves but no one answered. They noticed that the side doors and back doors leading to the basement of the house were all open, and they also saw that the keys to the side door were still in the lock of one of the side doors. There was no sign of forced entry. After again announcing their presence, the officers went to plaintiff's second house next door but got no response there.

The officers then returned to the first house and now they decided to go inside. They "cleared" the house and found nobody was there. As they left the house, the officers closed and locked the doors, and they left notes for plaintiff at both houses advising that the police had locked the doors and taken the found keys with them for plaintiff to pick up at the police station.

_____

[1] The officers' police report states: "Ortiz told officers that he was being harassed by an elderly woman." Doc. #23-2 at 7. Plaintiff argues that she was only 65 years old at the time of the events in question and that she was not an elderly woman. The relevant issue, however, is what the police were told by Ortiz, and plaintiff has not adduced any admissible evidence to dispute that the police were told and could have reasonably believed that plaintiff was an elderly woman. Indeed, one of plaintiff's own letters that she wrote to Ortiz and that Ortiz in turn gave to the police referred to herself as an elderly woman. *Id.* at 12 ("Is it only trees that annoy you? Or are you targeting me because I am elderly and you think that I can be bullied?").

All this time plaintiff had been out of town at another one of her properties to take care of her horse. She had left her doors open while she was gone in order to "air the places out." Doc. #23-2 at 28. When she got back, she found the officers' notes, let herself into her house with a spare set of keys, and did not otherwise find anything amiss inside the house.

She then went to the police station to retrieve her keys, and she spoke to the officers at that point about the complaint from Ortiz. The officers cautioned plaintiff to avoid contact with Ortiz and not to stare at his children.

Plaintiff filed this lawsuit against the defendant officers pursuant to 42 U.S.C. § 1983, contending that their warrantless entry into her house was a violation of her rights under the Fourth Amendment. Defendants have now moved for summary judgment.

## DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton,* 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Grp. LLC,* 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner,* 480 F.3d 140, 145 (2d Cir. 2007)). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan,* 134 S. Ct. at 1866; *Caronia v. Philip Morris USA, Inc.,* 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial.'" *Tolan,* 134 S. Ct. at 1866 (quoting *Anderson,* 477 U.S. at 249).

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A "search" for purposes of the Fourth Amendment occurs either when the police intrude upon a person's reasonable expectation of privacy or, alternatively, if the police otherwise trespass upon a suspect's person, house, papers, or effects for the purpose of acquiring information. *See Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013); *United States v. Jones*, 132 S. Ct. 945, 951 n.5 (2012).[2]

There is no question that the officers' entry into plaintiff's home was a search and that they did not have a warrant to do so. It is well established that "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States District Court*, 407 U.S. 297, 313 (1972). Indeed, "[t]he core premise underlying the Fourth Amendment is that warrantless searches of a home are presumptively unreasonable." *Harris v. O'Hare*, 770 F.3d 224, 231 (2d Cir. 2014).

Still, the Fourth Amendment's warrant requirement is subject to many well-recognized exceptions. Two of those exceptions are at issue here: the "community caretaking" exception and the "emergency aid" exception. *See Cady v. Dombrowski*, 413 U.S. 433, 441 (1973) ("community caretaking" exception); *Michigan v. Fisher*, 558 U.S. 45, 47–49 (*per curiam*) ("emergency aid" exception); *see also Sutterfield v. City of Milwaukee*, 751 F.3d 542, 553–61 (7th Cir. 2014) (discussing both exceptions). Both these exceptions exist in recognition that the

---

[2] The Fourth Amendment also regulates seizures. Although I do not understand the complaint to allege an unlawful seizure that took place apart from a search, to the extent that plaintiff's claim might rely on the officers' taking of her keys to the police station, the officers would have qualified immunity for the same reasons that they do for the related search of plaintiff's house.

function of the police is not merely to investigate and solve past crimes but also to protect people against future harm. *See generally* Debra Livingston, *Police, Community Caretaking, and the Fourth Amendment*, 1998 U. Chi. Legal F. 261, 263 (1997) (discussing dual roles of police officers, noting that "municipal police spend a good deal of time responding to calls about missing persons, sick neighbors, and premises left open at night" and that they "spend relatively less time than is commonly thought investigating violations of the criminal law").

Not every police violation of the Fourth Amendment justifies an award of money damages. That is because the doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (*per curiam*). In this manner, "[q]ualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

Qualified immunity protects an officer from liability if "(1) his conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Simpson v. City of New York*, 793 F.3d 259, 268 (2d Cir. 2015); *see also Amore v. Novarro*, 624 F.3d 522, 529–30 (2d Cir. 2010). As the Supreme Court has explained, "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). Thus, an officer is entitled to qualified immunity if, on the basis of the facts known to the

officer when he engaged in the conduct at issue, "officers of reasonable competence could disagree as to the lawfulness of such conduct." *Manganiello v. City of New York*, 612 F.3d 149, 164–65 (2d Cir. 2010).

The Second Circuit has noted that "[t]o determine whether the relevant law was clearly established, we consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law." *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014). The law may be clearly established if "decisions from this or other circuits clearly foreshadow a particular ruling on the issue." *Ibid.* (internal quotations omitted). Although there need not be "a case directly on point," it must nonetheless be clear that "existing precedent [has] placed the . . . constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015); *see also White v. Pauly*, 137 S. Ct. 548, 552 (2017) (denial of qualified immunity on excessive force claim was in error where court "failed to identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment," and instead relied on cases that "lay out excessive-force principles at only a general level.").

Here it is apparent to me that an objectively reasonable police officer could have believed that the entry into plaintiffs' home would not violate the Fourth Amendment. The police were told that plaintiff was an elderly woman. The police knocked and announced their presence but received no response. The police found the doors to plaintiff's home were open and the keys left in one of the open doors. These facts were unusual and potentially ominous enough that an objectively reasonable police officer could have believed that plaintiff was in jeopardy inside and that this possibility justified an immediate entry into the home.

It does not look like the Second Circuit has addressed the application of the community-caretaking or emergency-aid exceptions on facts similar to this case. The First Circuit, however, has applied qualified immunity on highly similar facts, concluding that the community-caretaking exception arguably allowed the police to enter a person's home on the report of a neighbor who called the police to say that the door to the home was standing wide open. *See MacDonald v. Town of Eastham*, 745 F.3d 8 (1st Cir. 2014). The First Circuit surveyed conflicting precedent about the application of the community-caretaking exception in this context, and concluded that "[t]he short of it is that neither the general dimensions of the community caretaking exception nor the case law addressing the application of that exception provides the sort of red flag that would have semaphored to reasonable police officers that their entry into the plaintiff's home was illegal." *Id.* at 15. That is equally true here.

Plaintiff argues that the community caretaking exception applies only to the police's search and seizure of automobiles and does not apply to searches by the police inside the home. Maybe plaintiff is right, but the federal courts of appeals are deeply divided on the question. *See Sutterfield*, 751 F.3d at 556 (collecting cases). And the Second Circuit has yet to take sides.[3] Accordingly, the law was not clearly established as of the time of the officers' actions in this case that the community caretaking function could not apply to an entry into plaintiff's home. Just "the fact that the courts are divided . . . demonstrates that the law on the point is not well

---

[3] Not to the contrary is the Second Circuit's decision in *Harris v. O'Hare*, 770 F.3d 224, 239 n.10 (2d Cir. 2014). In that case, police officers, without a warrant, entered a fenced in yard in search of illegal guns. *Id.* at 226. The police officers were proceeding on the basis of a tip from a man they had just arrested for dealing drugs. *Ibid.* The officers claimed that they were fulfilling their community caretaking duties because "illegal guns that are unsecured are a present and immediate danger to the public and to the community." *Id.* at 229. The Second Circuit held that the community caretaking exception did not apply, and that a "reasonable officer . . . should have known that it was unlawful to invade [the yard] under the circumstances." *Id.* at 239 & n.10. Notwithstanding its rejection of the exception in that context involving a person's backyard, the court of appeals did not announce that the exception could not apply at all to someone's home (or curtilage), but stated that there was nothing in the case law that suggested qualified immunity would be appropriate to the facts "at issue here." *Id.* at 239 n.10.

established." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1868 (2017). So even if plaintiff is right on the merits about the limits of the community caretaking exception, this would not overcome the officers' qualified immunity in the absence of clearly established law in plaintiff's favor.

In any event, even if I assumed that the community caretaking exception could not apply here, an objectively reasonable law enforcement officer could have believed that entry into plaintiff's home was justified under the "emergency aid" exception. Indeed, as the Second Circuit long ago made clear, "[p]olice officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance." *Tierney v. Davidson,* 133 F.3d 189, 196 (2d Cir. 1998). An objectively reasonable police officer could have believed an elderly woman to be in distress or in danger on the facts presented here.

Plaintiff argues that the "true motivation" for what the officers did was "not 'community-caretaking' but to gather evidence for use against her." Doc. #24 at 4. This argument ignores that the Fourth Amendment's protections do not depend upon an assessment of a police officer's subjective motivations. "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstance, viewed *objectively* justify the action," and "[t]he officer's subjective motivation is irrelevant." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006) (applying the emergency-aid exception). Equally so, if the facts known to a police officer would be sufficient for an objectively reasonable officer to believe his actions to be constitutional, then qualified immunity applies regardless of the actual officer's motives. *See, e.g.*, *Duamutef v. Hollins*, 297 F.3d 108, 113 (2d Cir. 2002) (Sotomayor, J.).

Defendants are entitled to qualified immunity, and so there is no need for me to resolve whether defendants' actions actually violated the Fourth Amendment. Because any ruling that I

might make on the merits of plaintiff's claims would have no precedential effect for purposes of future cases involving either the merits of the Fourth Amendment question itself or even for the application of qualified immunity, I won't wander into the thicket of conflicting precedent on the application of the community-caretaking or emergency-aid exceptions in this context. In the event of appellate review of this ruling, it will of course be for the Second Circuit to decide if it wishes in its discretion to offer guidance for the police and citizens alike in this important area of the law. *See Pearson v. Callahan*, 555 U.S. 223, 241–43 (2009); *Lawson v. Hilderbrand*, 2016 WL 3039710, at *2–4 (D. Conn. 2016) (discussing reasons why appellate courts should consider reaching the merits of disputes involving police entry into the home).

### CONCLUSION

Defendants' motion for summary judgment (Doc. # 23) is GRANTED. The clerk is directed to enter judgment in favor of defendants and close this case.

It is so ordered.

Dated at New Haven this 21st day of August 2017.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge